## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## AT NEWPORT NEWS

RON W. WALDEN, JR.,

       Plaintiff,

v.

SEAWORLD PARKS &
ENTERTAINMENT, INC., a Delaware
Corporation

       Defendant.

Case No. 4:11-CV-0113-MSD-FBS

## DEFENDANT SEAWORLD PARKS & ENTERTAINMENT, INC.'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL RESPONSES TO INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS

Defendant SeaWorld Parks & Entertainment, Inc. ("SeaWorld" or "Defendant"), by and

through undersigned counsel, hereby files this memorandum of law in opposition to Plaintiff Ron

W. Walden, Jr.'s ("Walden" or "Plaintiff") Motion to Compel and Memorandum in Support

thereof:

### INTRODUCTION

Plaintiff's counsel has made clear during his discussions with SeaWorld's counsel that

his primary goal in this litigation is to settle this matter – as he has done with most Title III

American with Disability Act ("ADA") cases he has filed.  Exasperated that a defendant has

chosen to zealously defend against Plaintiff's claims, Plaintiff seeks burdensome, oppressive and

irrelevant discovery, to which Defendant made timely and specific objections.  Additionally,

Plaintiff overstates the events leading up to the pending Motion to Compel in an effort to portray

SeaWorld as a party that consistently acts in bad faith, when in fact the Plaintiff is a serial Title

III plaintiff who through the discovery process is attempting to harass and burden SeaWorld

while he engages in a fishing expedition.

## FACTS AND PROCEDURAL BACKGROUND

To support his Motion to Compel, Plaintiff has laid out a self-serving and inaccurate view

of the communications between the parties and the events preceding this Motion.  To the extent

the prior litigation is relevant to the pending case, a more complete view must be given.

### A.    The First Complaint and Initial Discovery Requests

Plaintiff filed its initial suit against Defendant on May 21, 2010, captioned *Ron Walden,*

*Jr. v. Busch Entertainment Corp.*, Case No. 4:10-cv-0064 ("*SeaWorld I*"), claiming that Busch

Gardens Williams (the "Park" or "Busch Gardens") was in violation of Title III of the Americans

with Disabilities Act (the "ADA").  In the first litigation, Plaintiff made many of the same

overbroad discovery requests made in the pending case ("*SeaWorld II*").  *Compare* Ex. A,

Plaintiff's Interrogatories to Defendant and Plaintiff's Requests for Production to Defendant

propounded September 15, 2010 in *SeaWorld I*, to Ex. B, Plaintiff's First Set of Interrogatories

and Plaintiff's First Set of Requests for Production of Documents propounded in the pending

case on October 20, 2011.  SeaWorld discussed the overbroad discovery with Plaintiff's counsel,

at which time the parties agreed to forego discovery while they explored settlement and entered

into an agreed upon protective order.

SeaWorld, at Plaintiff's request, produced the 2010 Balance Sheet for SeaWorld, with the

understanding that if Plaintiff's counsel believed he needed additional financial information he

would contact SeaWorld's counsel to discuss narrowing the requests.  Indeed, after the Balance

Sheet was produced, the parties again went back and forth over whether the information was

sufficient, at which time, SeaWorld's counsel advised Plaintiff's counsel that he had produced

financial statements for his client during the relevant time period, and that further financial

statements from the prior owner would be available publicly at http://www.anheuser-

busch.com/AnnualReports.html. Ex. C, Mar. 29, 2011 Email from E. Martin to B. Ku. Plaintiff's

counsel eventually accepted the financial documents produced by SeaWorld without objection.

In the pending case, Plaintiff again made similar facially overbroad requests, to which

SeaWorld objected, but still produced over 400 pages of information (the same financial

documents provided previously, plus some additional information). It is disingenuous for

Plaintiff's counsel to cite to the prior litigation for support of SeaWorld's alleged bad faith and

delay, without referencing SeaWorld's prior objections, the attempts made by the parties to

narrow discovery in light of SeaWorld's objections, and the Plaintiff's willingness to drop his

overly broad and burdensome requests, with the exception of SeaWorld's financial information.

**B.      Extensions Requested by Plaintiff to Explore Settlement Were Agreed to by
          SeaWorld**

In his recent Memorandum in Support of his Motion to Compel, D.I. 17, Plaintiff further

mischaracterizes the facts surrounding the parties' settlement negotiations. In November, 2010,

Plaintiff requested an extension of all deadlines, including discovery deadlines, seeking

additional time to explore settlement without incurring unnecessary fees and costs. SeaWorld

did not oppose the motion and agreed to join in because as of early November, 2010, it had yet to

receive a settlement demand from Plaintiff. Ex. D, Nov. 10, 2010 Email Exchange between R.

Sarmiento and E. Martin. Thereafter, SeaWorld repeatedly requested a settlement demand,

which Plaintiff assured was coming. At Plaintiff's request, SeaWorld again agreed to extend

Plaintiff's expert report deadline while it was awaiting the settlement demand. Ex. E, Feb. 25,

2011 Email from B. Ku to E. Martin. Plaintiff eventually made a settlement demand on March

4, 2011, which demanded payment of an unspecified amount of attorneys' fees, a monetary payment to Plaintiff, and the correction of over 200 alleged "barriers," the identification of which were seriously deficient in execution of measurements, application of law and assumptions of the cost involved to remedy. SeaWorld deemed the demand wholly unacceptable and on March 22 – only 18 days after it received the Plaintiff's demand – rejected it outright as it was entitled to do. To claim that SeaWorld misled Plaintiff or in any way stalled the settlement discussions is preposterous, particularly given Plaintiff's four month delay in providing a demand.

**C.     SeaWorld Did Not Agree to Plaintiff's Second Request to Delay the Case**

After agreeing to extend all deadlines to provide Plaintiff time to proffer a settlement demand, after waiting almost four months for the settlement demand to be made, and after seeing the unreasonableness of the demand made, SeaWorld was not inclined to grant Plaintiff yet another extension for its expert disclosures, particularly when the reason for the request was not delayed discovery (as Plaintiff contends), but rather was the expert's arrest on charges of receiving, possessing and distributing child pornography, which prevented the expert from finishing his report, being deposed within the discovery period, and testifying at trial. Once again, Plaintiff proposed extending all deadlines so he could obtain a new expert and prepare a new report. Ex. F, Apr. 18, 2011 Email from L. Mussman to E. Martin. SeaWorld believed the additional extensions prejudiced its case and would not be well-received by the Court. Accordingly, SeaWorld advised Plaintiff that it would not agree to the extensions, but that it would not oppose a dismissal without prejudice, ultimately leaving the choice to Plaintiff as to whether to proceed in the first case, or re-file a second case. Ex. G, Apr. 19, 2011 Email from E. Martin to L. Mussman. As a result of losing his expert to serious and shocking criminal charges, Plaintiff elected to take a voluntarily dismissal without prejudice and re-file.

**D.      Shortly After Plaintiff Refiled this Lawsuit, He Propounded Substantially Similar Discovery Requests to the Ones Propounded in *SeaWorld I*.**

Plaintiff filed the pending lawsuit on July 22, 2011, and propounded discovery on October 20, 2011. Pursuant to the Court's Rule 26(f) Pretrial Order, "no party will be required to respond to a deposition notice or other form of discovery sooner than **November 25, 2011**." D.I. 13. November 25, 2011 was Black Friday, a date where the Federal Judicial System, as well as most businesses throughout the country, was closed. Accordingly, SeaWorld timely filed its objections on the following Monday, November 28, 2011. At no time prior to the pending Motion has Plaintiff challenged the timeliness of SeaWorld's objections, nor has Plaintiff engaged in an adequate meet and confer with respect to this issue.

In late November 2011, SeaWorld was still gathering documents and information from its client, who was about to embark on its busy Christmas Town season. Consequently, SeaWorld advised Plaintiff's counsel that the responses would be provided in the near future. On December 22, 2011, SeaWorld produced over 400 pages of documents, most of which had been provided in the prior litigation, and as explained above, deemed sufficient to respond to all requests, and at minimum, the requests seeking financial information. SeaWorld's formal responses were provided to Plaintiff immediately after the New Year, on January 6, 2012.

Counsel for SeaWorld advised Plaintiff's counsel that he would be more than willing to engage in a discussion where Plaintiff could identify exactly what information he thought he was entitled to receive. Ex. H, Jan. 6, 2012 Email from E. Martin to R. Casey. Plaintiff did arrange for a meet and confer with SeaWorld's counsel a few days thereafter, but he insisted that SeaWorld had waived its objections, and refused to engage in any discussion related to the relevance or merits of each request for fear of losing its waiver argument. Ex. I, Jan. 11, 2012

Letter from R. Gray to M. R. Casey. As a result of Plaintiff's failure to seriously confer regarding these discovery issues, the parties are now before the Court seeking guidance.

## ARGUMENT

Given the nature of Plaintiff's overly broad and burdensome requests seeking irrelevant information in an effort to harass a party into settlement, SeaWorld has provided adequate responses to Plaintiff's requests.

### A.    SeaWorld's Objections Are Not Waived.

Plaintiff's arguments of timeliness and lack of specificity supporting its waiver claims lack merit. The sheer breadth of Plaintiff's written discovery requests undercuts Plaintiff's argument, especially since the requests are generally overly broad and, in some instances, seek disclosure and production of information and documents completely unrelated to Plaintiff's claims. *Byrd v. Reno*, No. 96-2375, 1998 U.S. Dist. LEXIS 11855, at *42-43 (D.D.C. Feb. 12, 1998). Thus, SeaWorld has not waived its relevance objections. *Caldwell v. Center for Correctional Health & Policy Studies, Inc.*, 228 F.R.D. 40, 44 (D.D.C. 2005) ("Although the objection based on burdensomeness has been waived, plaintiff is not entitled to demand from defendants information that is neither relevant to a claim or defense nor likely to lead to information that is.").

*Byrd* is instructive. When ruling on the plaintiff's motion to compel, the court observed:

> While irrelevance is easily the most common objection to an interrogatory or a request for production of documents, concluding that it is invariably waived whenever it is not timely asserted would lead to absurd results. If a plaintiff was asked to explain her genealogy back to Eve, it would be absurd to state that a federal court was obliged to compel plaintiff to answer that interrogatory merely because the objection to its relevance was a day late. Additionally, parties in discovery hardly need an inducement to ask the most outrageous questions possible in the hope that an untimely response would permit them to get indirectly what they

> knew they could not get directly. Accepting the proposition that a
> federal court must order an interrogatory answered no matter how
> irrelevant the information it seeks mocks the true purpose of the
> Federal Rules of Civil Procedure as stated in Rule 1, *i.e.*, that the
> rules be "construed and administered to secure the just, speedy,
> and inexpensive determination of every action."

1998 U.S. Dist. LEXIS 11855, at *16-17.  Accordingly, the court in *Byrd* analyzed the discovery

requests at issue *one by one* and issued a ruling as to each.

Thus, defense counsel's January 11th proposal to Plaintiff's counsel is the proper course

to resolve the dispute in the instant case. Ex. I. Namely, counsel for the parties should discuss

Plaintiff's discovery requests one by one to determine exactly what Plaintiff seeks in discovery

and to determine if some of discovery requests can potentially be narrowed, or altogether

withdrawn.  Additionally, Defendant may be able to offer a stipulation in response to a certain

interrogatory or request for production in place of an answer or response.  Although this process

may be tedious and time-consuming for the attorneys, it ensures that discovery disputes are

addressed in the most thorough and efficient manner before bringing them before the Court.

Indeed, courts generally favor this approach, as it prevents courts from hearing the disputed

issues on more than one occasion.   For example, in *Cappetta v. GC Services Limited

Partnership*, a case Plaintiff repeatedly cites in his memorandum in support, it appears that Judge

Lauck did exactly what defense counsel sought to do with Plaintiff's counsel before the instant

motion was filed—analyze each discovery request individually. No. 3:08cv288, 2008 U.S. Dist.

LEXIS 103902, at *7-14.  For these reasons, Plaintiff's waiver argument is misplaced.

**B.      An Analysis of Each Interrogatory Shows that SeaWorld's Objections Are
Warranted and Should be Sustained.**

**1.      Individuals Operating Any Business in the Park**

In Interrogatory No. 4, the Plaintiff seeks the identity of each person operating any business or having a license to operate any business in the Park. The term "business" makes this interrogatory overly broad as it would encompass entities operating any type of business or business license, regardless of whether that business would in any way affect a customer's accessibility to the Park. For instance, this interrogatory may include, but is not limited to, individuals providing catering, transportation, picture taking, rental equipment, cleaning services, and maintenance for the Park. Moreover, Plaintiff testified in his deposition that he did not enjoy all of the vendors, merchandisers or rides throughout the entire Park, and there is currently no evidence that he will return to do so. *See, e.g.,* Ex. J, Deposition of Walden taken Dec. 14, 2011 ("Walden Dep.") at 10, 29 – 33 (explaining why he did not go on certain rides). Thus, this interrogatory must be narrowed by location. If Plaintiff narrowly tailors this interrogatory, SeaWorld may be able to provide responsive information; but, until that is done, SeaWorld's objections should be sustained.

### 2.    Financial Information for SeaWorld and Blackstone Group

SeaWorld purchased the Park shortly after the first lawsuit was filed. Blackstone in turn purchased SeaWorld, and is thus the parent company of SeaWorld. Notwithstanding, SeaWorld bears the sole financial responsibility for the Park. Accordingly, SeaWorld's objections to Interrogatory No. 15 seeking financial information about Blackstone should be sustained as such information is wholly irrelevant to the pending matter.

As discussed above, in *SeaWorld I*, the parties discussed ad nauseam the financial information that would be acceptable to Plaintiff to assist Plaintiff's expert in determining what removal barriers were readily achievable. As in the last litigation, SeaWorld provided a 2010 Balance Sheet, and is willing to supplement its production with its 2011 Balance Sheet once that

document is completed. The requested financial information that was not contained in the Balance Sheet is irrelevant to the pending matter and thus subject to SeaWorld's objections, which should be sustained by this Court.

### 3. Prior Lawsuits

Prior Title III lawsuits have no bearing on the claim at hand. The property is either in compliance with Title III of the ADA or not in compliance. If the property is not in compliance, then the parties need to consider whether the barrier removal is readily achievable. Accordingly, Plaintiff's Interrogatory No. 19 seeking the identity of prior lawsuits is unwarranted, harassing, overly broad, unduly burdensome and unlikely to lead to the discovery of admissible evidence. SeaWorld's objections to this interrogatory should be sustained.

### 4. Interrogatories to Which SeaWorld Has Supplemented its Responses or Provided Adequate Information

Plaintiff's interrogatory seeking the identity of each person having an ownership interest in the Park during the last five (5) years (Interrogatory No. 3) is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence in light of the temporal scope. SeaWorld has amended its response to identify SeaWorld Parks & Entertainment, Inc. as the entity that currently owns Busch Gardens Williamsburg. Most, if not all, of records related to construction or maintenance of the property previously held by the prior owners are now in SeaWorld's possession. As there is no reason to identify the prior owners, SeaWorld's objections should be sustained, and its supplemental response provided notwithstanding those objections should be deemed adequate.

SeaWorld further has supplemented its responses to Interrogatory Numbers 5 (persons with knowledge), 6 (custodian of documents), 7 (persons performing architectural or design services), 9 (persons providing construction or remodeling services), 11 (parking lot

information), 12 (handicap parking information) and 13 (curb ramps), subject to its stated objections. Because these interrogatories are overly broad, and as such are unduly burdensome and seek information not relevant to the pending litigation, SeaWorld's objections must stand. For instance, Interrogatory Number 5 seeks each person having knowledge of the facts relating to the Complaint, Answer or Affirmative Defenses, which SeaWorld has provided in its supplemental answer. The Interrogatory then goes on to suggest SeaWorld's response should include all persons hired or contracted to provide any alterations, modifications, remodeling or renovating after January 26, 1992. Such individuals might have knowledge with respect to construction or remodeling performed on site, but likely not the specific facts of the Complaint or SeaWorld's affirmative defenses. Thus, the Interrogatory, as stated, is overly broad and unduly burdensome. Additionally, the identity of persons responsible for designs, remodeling or construction has been identified in response to Interrogatory Numbers 7 and 9.

Similarly, the Interrogatories seeking information about the parking lots are overly broad. Plaintiff parked in only one lot during his visit to Busch Gardens, the France lot, which contains all of the handicap parking for the Park. Ex. J, Walden Dep. at 6. Consequently, in response to Interrogatory Numbers 11, 12 and 13, SeaWorld has produced a site plan kept in its normal course of business which provides the requested information. Thus, its supplemental responses to these Interrogatories should be deemed adequate.

**C.    SeaWorld's Objections to Plaintiff's Requests for Production are Proper and Should Be Sustained.**

**1.    Ownership Information**

Plaintiff has propounded multiple document requests seeking information about the ownership of Busch Gardens Williamsburg. *See, e.g.,* Ex. B, Request Nos. 1 (Articles of Incorporation), 2 (Partnership Agreements), and 3 (Deed). SeaWorld has supplemented its

answer to Interrogatory Number 3 to specify that SeaWorld Parks & Entertainment, Inc., the Defendant in this matter, owns the property in question. Armed with this information, the document requests for the Articles of Incorporation, Partnership Agreements, and Deed become irrelevant, unnecessary and burdensome to produce.

### 2.  Contracts and Agreements Relating to Use of Busch Gardens

SeaWorld objected to Request Number 4 on the basis that as written it is overly broad, unduly burdensome and seeks documentation not reasonably calculated to lead to the discovery of admissible evidence. First, the Request is not limited by temporal scope. SeaWorld opened in 1976, and since that time has entered into hundreds, if not thousands, of agreements relating to the use of the Park, which could include, but are not limited to, vendors, merchandisers, caterers, photographers, transportation services, entertainers, cleaning companies and maintenance crews, in addition to entities or individuals that rent different portions of the property for events. Most of these contracts have nothing to do with accessibility issues or barrier removal. Moreover, the Request is likewise not limited to the areas of Busch Gardens Williamsburg where the Plaintiff either visited or intends to visit in the future. Until this Request is narrowly limited to describe the specific uses it seeks from specific areas of Busch Gardens Williamsburg, SeaWorld will stand on its objection.

### 3.  Financial Documentation

Plaintiff has sought multiple forms of financial information from SeaWorld on the basis that it needs this information to determine if barrier removals may be readily achievable. *See, e.g.,* Ex. B, Request Nos. 5 (tax returns), 6 (financial projects regarding future growth in revenue), 15 (certificates of occupancy), 17 (profits), 18 (financial resources), 20 (annual operating budget), 21 (overall financial resources), 30 (gross receipts), 31 (gross receipts at

Subject Property), and 41 (audited financial statements).  As discussed above, in *SeaWorld I*, the parties negotiated the type of financial information that would be acceptable.  As in the prior litigation, SeaWorld produced its 2010 Balance Sheet, and is willing to produce its 2011 Balance Sheet once the document is finalized.  The information contained in the Balance Sheet provides Plaintiff with information about Defendant's finances to enable Plaintiff to assess whether a barrier removal may be readily achievable.  The remaining requests for financial information are harassing, cumulative, overly broad and unduly burdensome, and as such, SeaWorld's objections should be sustained.

Plaintiff further sought all documentation reflecting financing by the federal government of any construction at the Subject Property.  *See* Ex. B, Request No. 25.  SeaWorld amended its Response to indicate it did not receive financial funding for construction and, thus, did not have any responsive documents.  SeaWorld's amended response moots Plaintiff's issue with this Request.

### 4.    Number of Employees

Though Plaintiff has failed to explain how the number of employees employed by SeaWorld has any bearing on a Title III case, it nonetheless has asked SeaWorld to provide documentation identifying the number of employees.  *See, e.g.,* Ex. B, Request Nos. 7 (number of employees since 2005) and 19 (number of employees from last three years).  Requests of this nature do not even meet the liberal relevancy threshold of Federal Rule of Civil Procedure 26.  SeaWorld's objections to these Requests should be sustained.

### 5.    Site Plans, Construction, Remodeling, Licenses

Plaintiff seeks a series of documents related to renovations, remodeling, location of buildings and pathways, construction, rides, etc., but none of these requests are narrowly tailored

to the facilities, rides or pathways enjoyed by Plaintiff during his visit, or to facilities, rides or pathways he intends to visit in the future.  For example, Ex. B, Request No. 9 seeks all documents reflecting the number or location of any stores, rooms, entrances, pathways, bathrooms and parking spaces.  This Request is not reasonably limited to the barriers upon which Plaintiff may have standing to enforce their removal, but instead encompasses the entire Park.  Moreover, there are hundreds of documents that may reference this information, but to sort through all of the documents would be entirely burdensome.  Instead, SeaWorld has identified that such information may be found in SeaWorld's blueprints, site plans, and other architectural renderings at its Busch Garden Williamsburg site, and has offered Plaintiff's counsel to inspect such documents as they are kept in SeaWorld's normal course of business.  SeaWorld is willing to make the same offer to Request Nos. 12 (any design or construction of facilities at the Subject property), 13 (all documents reflecting alteration, modifications, remodeling and/or renovation), and 28 (all documents reflecting the construction of new facilities).

Plaintiff further seeks documents reflecting applications for building permits.  *See* Request No. 10.  Just because an entity seeks a building permit does not mean that the construction has actually taken place.  Thus, SeaWorld's objection that this Request is overbroad, unduly burdensome, and not reasonably calculated to lead to admissible evidence is warranted.  Likewise, certificates of occupancy (Request No. 15) also would provide information in excess of that which may potentially lead to the discovery of admissible evidence in this case.  In light of SeaWorld's offer to permit Plaintiff's counsel to inspect the site plans, drawings, blueprints and other architectural renderings, which would clearly show the new construction completed in the Park, Requests Nos. 10 and 15 are cumulative and burdensome.

Similarly, Plaintiff seeks all documents reflecting elevator licenses, permits, maintenance agreements, and other documents reflecting installation, repair, or maintenance of elevators. *See* Request No. 14. First, no where in the Complaint does Plaintiff contend he was denied access to an elevator. Indeed, elevators are not at issue in this case. Thus, any elevator license, permit or maintenance agreement would be irrelevant, and SeaWorld's objections to this Request should be sustained.

### 6. Steps Taken to Comply with the ADA

Plaintiff seeks general documentation relating to SeaWorld's compliance or efforts to comply with the ADA. Specifically, Plaintiff sought all documents reflecting measures taken by SeaWorld to comply with the ADA at Busch Gardens Williamsburg (Request No. 16), all documents reflecting a barrier removal (Request No. 26), all documents reflecting SeaWorld's policies and procedures for providing access to disabled individuals (Request No. 29), and all documents reflecting SeaWorld's overall approach to accommodation (Request No. 33). In response, SeaWorld produced an accessibility audit prepared by Defendant nearly a decade ago that lists potential barriers for disabled individuals and recommends possible corrections. SeaWorld further has produced updated charts identifying the completion date and the responsible SeaWorld employee for each issue identified in the accessibility audit. These charts, combined with various Disabled Access Guide policies and overviews (also produced), evidence SeaWorld's policies and procedures in removing barriers and identify the measures taken by SeaWorld to comply with the ADA. These documents respond to each of the above requests. While various emails *may* exist that reference a step taken to comply with the ADA, a complete search through all of SeaWorld's employees' email accounts to locate those few documents,

when such comprehensive audit charts have been produced, is unreasonable and unduly burdensome. As such, SeaWorld's objections to these Requests should be sustained.

## CONCLUSION

For the reasons mentioned herein, Plaintiff's Motion to Compel should be denied and SeaWorld's answers to Plaintiff's discovery requests should be deemed sufficient, or its objections sustained.

Respectfully submitted,
SeaWorld Parks & Entertainment, Inc.

By Counsel

_/s/_____
Eric B. Martin (VSB # 75157)
Attorney for Defendant SeaWorld Parks &
Entertainment
McGuire Woods LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219
Phone: (804) 775-1129
Fax: 804-698-2149
Emartin@McGuireWoods.com

## Certificate of Service

I hereby certify that on this 26th day of January, 2012, I served the foregoing via the Court's CM/ECF System, which will send a notice of electronic filing to the following counsel:

Shabnam Khalili, Esq.
Ku & Mussman, P.A.
4775 W. Braddock Road, Suite 102
Alexandria, Virginia 22311
Skhalili7@gmail.com

And

Michael Ryan Casey
Ku & Mussman, P.A.
12250 Biscayne Blvd., Suite 406
Miami, Florida 33181
ryan@kumussman.com

                              /s/
                              Eric B. Martin
                              VSB # 75157
                              Attorney for Defendant SeaWorld Parks &
                                  Entertainment
                              MCGUIRE WOODS LLP
                              One James Center
                              901 East Cary Street
                              Richmond, Virginia 23219
                              Phone: (804) 775-1129
                              Fax: 804-698-2149
                              Emartin@McGuireWoods.com

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION

RON W. WALDEN JR.,                    )
                                      )
            Plaintiff,                )
                                      )
v.                                    )       CASE NO.: 4:10-cv-0064
                                      )
BUSH ENTERTAINMENT CORP.,             )
a Delaware Corporation,               )
                                      )
            Defendant.                )
                                     /

## PLAINTIFF'S NOTICE OF SERVICE OF INTERROGATORIES TO DEFENDANT

Plaintiff, by and through his undersigned attorneys, files this Notice of Service of

Interrogatories propounded to the above-named Defendant, to be answered in writing under oath and

within the time allowed by the applicable rules of the Court.

Respectfully Submitted,
KU & MUSSMAN, P.A.
Attorneys for Plaintiff
11098 Biscayne Blvd., Suite 301
Miami, FL 33161
Tel: (305) 891-1322
Fax: (305) 891-4512

By: _____
KU & MUSSMAN, P.A.
Attorney For Plaintiff
Shabnam Khalili, Esq.
Local Counsel
3110 Mount Vernon Avenue, #1108
Alexandria, VA 22305
Tel: (757) 880-7534

Page 1 of 10

**EXHIBIT**

A

09/15/2010  14:47   3058914512                    KU ANDMUSSMAN                          PAGE  04/12

Fax: (305) 891-4512
SKhalili7@gmail.com
Bar ID No.: 78681

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of September 2010, a true and correct copy of the foregoing has been furnished via U.S. Mail to: Eric B. Martin, Esq., McGuire Woods, LLP, One James Center, 901 East Cary Street, Richmond, Virginia, 23219.

By: _____

Shabnam Khalili, Esq.

PAGE 4/12 * RCVD AT 9/15/2010 2:38:32 PM [Eastern Daylight Time] * SVR:RIGHTFAX/6 * DNIS:2149 * CSID:3058914512 * DURATION (mm-ss):01-40

## PLAINTIFF'S INTERROGATORIES TO DEFENDANT
### DATED: September 15, 2010

1.    Identify by name, address, telephone number and title the following individuals or entities:

A.    All persons answering or assisting in answering these interrogatories;

B.    All persons or entities who have had any property interest in the property described in the Complaint at any time over the last five (5) years, including the nature of such property interest;

C.    Any persons or entities who operated or had a license to operate any business at the property described in the Complaint at any time over the last five (5) years;

D.    Any persons or entities who have any knowledge of the facts relating to the Complaint, or Answer or the Affirmative Defenses thereto and the paragraph or number of the Complaint, Answer or Affirmative Defense of which that individual or entity has knowledge; including but not limited to the name, address and telephone number of all individuals hired or contracted to provide any alterations, modifications, remodeling or renovation for the property including the parking lot.

E.    Any person or entities who are the custodian of any records requested in the Request for Production served along with these Interrogatories and the records for which they are custodian.

Page 3 of 10

F.      Any persons or entities who performed any alterations or construction on the property described in the Complaint at any time after January 26, 1992 or have knowledge of such occurrence.

G.      Any persons or entities who have performed any architectural or design services concerning the property described in the Complaint at any time since January 26, 1992.

H.      Any person who has served as the property manager of the property, or similar position on behalf of Defendant, since January 2005.

2.      Identify all documents which reflect the condition of the property described in the Complaint at any time since January 26, 1992, including but not limited to, plats, surveys, plans, schematics, photos or insurance applications for the property or its contents.

3.      If you have filed Affirmative Defenses please state: the name, address, and phone number of persons having knowledge of the facts upon which you base your Affirmative Defense, and identify all documents or other tangible things that support your or Affirmative Defense.

Page 4 of 10

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION

RON W. WALDEN JR.,     )
            )
  Plaintiff,      )
            )
v.           )  **CASE NO.: 4:10-cv-0064**
            )
BUSH ENTERTAINMENT CORP.,  )
a Delaware Corporation,    )
            )
  Defendant.     )
_____/

## PLAINTIFF'S REQUESTS FOR PRODUCTION TO DEFENDANT
### DATED: September 15, 2010

  Plaintiff, by and through his undersigned counsel, and pursuant to the applicable Federal

Rules of Civil Procedure, request that each Defendant produce, within the time allowed by said

Rules, at the offices of the undersigned, the following documents:

1. Articles of Incorporation for the Defendant and/or a copy of any Partnership Agreement

  evidencing any limited or general partnership status.

2. A copy of the Deed evidencing title to the property referenced in the Complaint or any

  Agreement evidencing legal title for use, including any Lease Agreements.

3. Financial Statements (annual statements, income statements, and cash flow statements) of

  the Defendant for the years 2005 through the present.

4. A copy of any Corporate Income Tax Returns or Partnership Tax Returns or Individual Tax

  Return for the last three (3) years for the Defendant.

5. A copy of any financial projections (estimate of future growth in revenue) for the

Page 5 of 10

corporation.

6.   Any and all documents evidencing the number of employees of the Defendant for the years 2005 through the present, including but not limited to, unemployment compensation tax returns, employee ledgers, and other documentation. (You may list the number of employees for each year in lieu of these records).

7.   All blueprints, site plans, and other architectural renderings for the property in the possession, custody or control of the Defendant showing the number and location of any stores, rooms, entrances, pathways, bathrooms, disabled hotel rooms and parking spaces as applicable to the property.

8.   All applications for building permits pulled by or on behalf of the Defendant in this action for the property referenced in the Complaint.

9.   Any and all reports, memoranda, documentation, or other writings from 1992 to the present concerning compliance with the Americans With Disabilities Act.

10.  Any and all documentation evidencing any design or construction of facilities by or on behalf of the Defendant for first occupancy after January 26, 1992, including but not limited to plans, designs, blueprints, contracts for construction, and like documentation.

11.  Any and all documentation evidencing alterations, modifications, remodeling or renovation to the building or facility by or on behalf of the Defendant or any predecessor any time after January 26, 1992 including but not limited to plans, designs, blueprints, contracts for construction and like documentation.

12.  Any and all documentation evidencing elevator licenses, permits, maintenance agreements, and other documentation evidencing the installation, repair, or maintenance of elevators (if

Page 6 of 10

any) in the Defendant's facilities as referenced in the Complaint.

13.   That the Defendant permit Plaintiff to enter the Defendant's premises for the purpose of

inspecting and measuring, surveying, photographing, and testing the Defendant's property

for purposes of documenting the Defendant's compliance or lack thereof with Title III of the

American's With Disabilities Act.

Respectfully Submitted,
KU & MUSSMAN, P.A.
Attorneys for Plaintiff
11098 Biscayne Blvd., Suite 301
Miami, FL 33161
Tel: (305) 891-1322
Fax: (305) 891-4512

By: _____
KU & MUSSMAN, P.A.
Attorney For Plaintiff
Shabnam Khalili, Esq.
Local Counsel
3110 Mount Vernon Avenue, #1108
Alexandria, VA 22305
Tel: (757) 880-7534
Fax: (305) 891-4512
SKhalili7@gmail.com
Bar ID No.: 78681

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of September 2010, a true and correct copy of the
foregoing has been furnished via U.S. Mail to: Eric B. Martin, Esq., McGuire Woods, LLP, One
James Center, 901 East Cary Street, Richmond, Virginia, 23219.

By: _____
Shabnam Khalili, Esq.

Page 7 of 10

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION

RON W. WALDEN JR., )
)
          Plaintiff, )     Case No: 4:11-cv-00113-MSD-FBS
)
v. )
)
SEAWORLD PARKS & )
ENTERTAINMENT, INC., )
a Delaware Corporation, )
)
          Defendant. )
_____ )

## PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANT

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff Ronald Walden, Jr.,

through his counsel of record, requests that Defendant SeaWorld Park & Entertainment, Inc.,

answer the following interrogatories in writing under oath and within the time allowed by the

applicable rules of the Court.

## INSTRUCTIONS

1.    Each interrogatory is to be construed and answered or responded to separately and

independently, and is not to be referenced to any other interrogatory for purposes of limitation or

exclusion.

2.    These interrogatories are continuing in nature. If further information or documents

come into your possession or are brought to your attention during preparation for trial,

supplementation of your response may be required under Federal Rule of Civil Procedure 26(e).

3.    The connectives "and" and "or" shall be construed disjunctively or conjunctively

as necessary to bring within the scope of the interrogatory all information that might otherwise be

1

EXHIBIT

B

construed to be outside of its scope.

4.     The terms "all," "any," "each," and "every" shall each be construed as both "each" and "every" to bring within the scope of the interrogatory all responses which might otherwise be construed to be outside its scope.

5.     The use of the singular shall be deemed to include the plural, and the use of masculine, feminine, or neutral genders shall include each gender, as appropriate in context.

6.     If an interrogatory calls for disclosure of any information that you intend to withhold on the grounds that such information is privileged or otherwise protected from disclosure, or if any privilege is claimed as a ground for not answering any interrogatory in full, you shall identify in writing (a) the privilege claimed; (b) the authors, addresses, and recipients of documents claimed to be privileged; (c) the date of the document or oral communication; (d) the general subject matter of the document or oral communication; and (e) sufficient facts from which a basis and validity of the privilege can be ascertained.

7.     If, after conducting a reasonable investigation, a full answer cannot be provided for any interrogatory, state that such is the case and answer to the fullest extent possible, stating what information is available, what information cannot be provided, why the information is unavailable, and what efforts were made to obtain the unavailable information.

## DEFINITIONS

1.     "Communicate" or "communication" includes every manner or means of disclosure, transfer, or exchange of information (in the form of facts, ideas, inquiries, or otherwise), whether orally, electronically, by document, telecopier, mail, personal delivery, or otherwise.

2.      "Document" shall have the broadest meaning permitted under the Federal Rules of Civil Procedure and includes, without limitation, any type of electronically stored information. "Document" includes all originals, copies, non-identical copies (whether different from the original because of underlining, editing marks, notes made on or attached to such copy, or otherwise) and drafts, whether printed or recorded (through a sound, video, or other electronic, magnetic, or digital recording system) or reproduced by hand, of the following: letters, correspondence, telegrams, telexes, memoranda, records, summaries of personal conversations or interviews, minutes or records or notes of meetings or conferences, note pads, notebooks, postcards, "Post-It" or similar notes, stenographic notes, notes, notebooks, opinions or reports of financial advisors or consultants, opinions or reports of experts, projections, financial or statistical statements or compilations, contracts, agreements, appraisals, analyses, purchase orders, confirmations, publications, articles, books, pamphlets, circulars, microfilm, microfiche, reports, studies, logs, surveys, diaries, calendars, appointment books, maps, charts, graphs, bulletins, photostats, speeches, data sheets, pictures, photographs, illustrations, blueprints, films, drawings, plans, tape recordings, videotapes, disks, diskettes, data tapes or readable computer-produced interpretations or transcriptions thereof, electronically transmitted messages ("e-mail"), voice mail messages, interoffice communications, material of any sort and in any format maintained or available at any time on the World Wide Web (whether formerly, currently, or both), any metadata associated with any electronically stored information, and any other writings, papers, tangible things and electronically stored information of whatever description.

3.      "Identify" means: (a) with respect to factual or legal issues, to state all facts, acts or events, documents, persons with knowledge, and/or legal standards that relate to the subject of

3

the interrogatory and describe the way in which they relate to the subject of the interrogatory; (b) when used to reference a natural person, to state the person's full name and present or last known address and telephone number(s) and the person's present or last known position, title and employment or business affiliation as well as the person's work e-mail address; and (c) when used in reference to a document, to state the author of the document, the date of the document, each addressee or copy addressee of the document, the subject matter of the document, and the present location of the document and the name of the present custodian of the document.

4.      "Person" or "Persons" refers to a natural person, firm, proprietorship, association, partnership, corporation, or any other type of organization or entity.

5.      "Subject Property" refers to the real property and improvements known as Busch Gardens, generally located at 1 Bush Gardens Boulevard, Williamsburg, Virginia 23185.

6.      "You" or "Your" means Defendant Seaworld Parks & Entertainment, Inc., its predecessors, successors, affiliates, subsidiaries, divisions, parent companies, partners, agents, employees, officers, directors, representatives, beneficiaries or any other person or persons acting for or purportedly acting on behalf of or in concert with Defendant Seaworld Parks & Entertainment, Inc.

7.      Except as otherwise set forth in these "Instructions" and "Definitions" all other words utilized in these interrogatories are to be interpreted according to their normal and everyday usage.

## INTERROGATORIES

### INTERROGATORY NO. 1

Identify each Person who provided information used to prepare responses to these

4

interrogatories, and for each Person, please Identify the interrogatory(ies) for which that Person provided information.

**INTERROGATORY NO. 2**

Identify each Person who has been interviewed or consulted in connection with this litigation and/or *Walden v. Busch Entertainment Corp.*, No. 4:10-cv-0064 (E.D. Va).

**INTERROGATORY NO. 3**

Identify each Person having any ownership interest in the Subject Property at any time during the last five (5) years, including the nature of such ownership interest.

**INTERROGATORY NO. 4**

Identify each Person who operated or had a license to operate any business at the Subject Property at any time during the last five (5) years, including the nature of the business.

**INTERROGATORY NO. 5**

Identify each Person having knowledge of the facts relating to the Complaint, Answer, or Affirmative Defenses thereto and the paragraph or number of the Complaint, Answer or Affirmative Defense of which that Person has knowledge, including but not limited to Persons hired or contracted to provide any alterations, modifications, remodeling or renovation for the Subject Property since January 26, 1992.

**INTERROGATORY NO. 6**

Identify each Person who is a custodian of any Document requested in Plaintiff's First Requests for the Production of Documents and the records for which they are custodian.

**INTERROGATORY NO. 7**

Identify each Person who has performed any architectural or design services concerning

the Subject Property at any time since January 26, 1992.

**INTERROGATORY NO. 8**

Identify all policies of insurance which relate in any way to this litigation.

**INTERROGATORY NO. 9**

Identify each Person that has been contracted to provide construction and/or remodeling services at the Subject Property, including a description of the project.

**INTERROGATORY NO. 10**

Identify all Documents that relate in any way to a need or desire on Your part to respond to or meet obligations under the Americans with Disabilities Act.

**INTERROGATORY NO. 11**

Identify each parking lot at the Subject Property (e.g. England, France, Italy, Germany, etc.) and Identify for each (a) the total number of parking spaces for passenger vehicles, (b) the total number of parking spaces for buses, and (c) the number of parking spaces designated as handicapped and/or disabled.

**INTERROGATORY NO. 12**

For each parking space designated as handicapped and/or disabled at the Subject Property, provide for each: (a) the location, (b) how the space is designated as handicapped and/or disabled, (c) its dimensions.

**INTERROGATORY NO. 13**

For each parking lot at the subject property, Identify the number of curb ramps at each.

**INTERROGATORY NO. 14**

For SeaWorld Parks & Entertainment, Inc., Identify the following financial information

6

by dollar amount. If the information is not current, please provide the most recent calculation and the date of the document (e.g., financial statement) from which it was taken.

    (a)    Cash and cash equivalents;

    (b)    Investments;

    (c)    Earnings for the previous fiscal year (and identify the fiscal year); and

    (d)    Cash Flow for the previous fiscal year (and identify the fiscal year).

## INTERROGATORY NO. 15

For Blackstone Group, Identify the following financial information by dollar amount. If the information is not current, please provide the most recent calculation and the date of the document (e.g., financial statement) from which it was taken:

    (a)    Cash and cash equivalents;

    (b)    Investments;

    (c)    Earnings for the previous fiscal year (and identify the fiscal year); and

    (d)    Cash Flow for the previous fiscal year (and identify the fiscal year).

## INTERROGATORY NO. 16

Identify every entrance route for customers wishing to enter the Busch Gardens theme park.

## INTERROGATORY NO. 17

Identify by name, location, description and cost all modifications, remodeling, construction, or similar projects at the Subject Property since January 26, 1992 that cost in excess of $1,000.

## INTERROGATORY NO. 18

7

Identify all Your policies, written or otherwise, regarding access for disabled individuals at the Subject Property.

**INTERROGATORY NO. 19**

Identify all lawsuits (including the case number and court filed) alleging violations of the Americans with Disabilities Act to which You have been a defendant.

Date: October 20, 2011

Respectfully Submitted,

KU & MUSSMAN, P.A.

By: _____
M. Ryan Casey, Esq. (Va. # 72806)
ryan@kumussman.com
12550 Biscayne Blvd., Suite 406
Miami, Florida 33181
Tel: (305) 891-1322
Fax: (305) 891-4512

*and*

Shabnam Khalili, Esq. (Va. # 78681)
SKhalili7@gmail.com
Of Counsel
4775 W. Braddock Road #102
Alexandria, VA 22311
Tel: (202) 573-7070
Fax: (305) 891-4512

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 20th day of October, 2011, a true and correct copy of the foregoing has been furnished by U.S. mail to all counsel of record.

By: _____
M. Ryan Casey, Esq.

8

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION

RON W. WALDEN JR.,                )
                                  )
          Plaintiff,              )        Case No: 4:11-cv-00113-MSD-FBS
                                  )
v.                                )
                                  )
SEAWORLD PARKS &                  )
ENTERTAINMENT, INC.,              )
a Delaware Corporation,           )
                                  )
          Defendant.              )
                                  )

## PLAINTIFF'S FIRST SET OF REQESTS FOR THE PRODUCTION OF DOCUMENTS TO DEFENDANT

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiff Ronald Walden, Jr.,

through his counsel of record, requests that Defendant SeaWorld Park & Entertainment, Inc.,

produce the documents described below, at the offices of Ku & Mussman, P.A. within the time

allowed by the applicable rules of the Court.

## INSTRUCTIONS

1.    Each document request is to be construed and answered or responded to separately

and independently, and is not to be referenced to any other document request for purposes of

limitation or exclusion.

2.    Unless otherwise specified, these requests seek documents and electronically-

stored information created on or after January 26, 1992.

3.    Except as otherwise noted, these requests cover documents in your possession,

custody or control including documents maintained at any of your present or former offices, at

1

your attorneys' offices, or elsewhere.

4.     The connectives "and" and "or" shall be construed disjunctively or conjunctively as necessary to bring within the scope of the document requests all responses and documents that might otherwise be construed to be outside of its scope.

5.     The terms "all," "any," "each," and "every" shall each be construed as both "each" and "every" to bring within the scope of the document request all responses and documents which might otherwise be construed to be outside its scope.

6.     The terms "refer," "relate," "reflect," or "concern" shall be construed to bring within the scope of the request all documents that comprise, evidence, constitute, describe, explicitly or implicitly refer to, were reviewed in conjunction with, or were generated as a result of the subject matter of the request, including but not limited to all documents that reflect, record, memorialize, discuss, evaluate, consider, review or report the subject matter of the request.

7.     The use of the singular shall be deemed to include the plural, and the use of masculine, feminine, or neutral genders shall include each gender, as appropriate in context.

8.     If any document requested herein is withheld or redacted on the basis of any claim of attorney-client privilege, the work product doctrine, or any other applicable privilege or immunity, you shall provide a written statement: (a) describing the nature of the document (e.g., letter, memorandum, minutes, telegram, notes, etc.); (b) specifying the date on which the document was prepared; (c) identifying the person(s) who prepared or authored the document; (d) identifying the person(s) to whom the document was sent, copied, or shown; (e) setting forth the subject matter of the document; and (f) stating the privilege or other doctrine pursuant to which the document is being withheld from production and setting forth the basis for such claim of

2

privilege or immunity from production.

9.    If any document or part thereof called for by this demand has been destroyed, discarded, or otherwise disposed of, you shall furnish a list setting forth, as to each document or part thereof: (a) the nature of the document (e.g., letter, memorandum, etc.); (b) the name, address, occupation, title and business affiliation of each person who prepared, received, viewed and has or has had possession, custody or control of the document; (c) the date of the document; (d) a description of the subject matter of the document; (e) the date of destruction or other disposition; (f) a statement of the reasons for destruction or other disposition; (g) the name, address, occupation, title and business affiliation of each person who authorized destruction or other disposition; (h) the name, address, occupation, title and business affiliation of each person who destroyed or disposed of the document; and (i) the paragraph(s) of this request which call for the production of the document.

10.    All definitions set forth above are in addition to the defined words' standard meanings. If you contend that you do not understand the definition of the term or phrase used in any request, you should respond to that portion of the request that you do understand and explain what it is that you do not understand with regard to the remainder of the request. If you believe that any request is overbroad in part, you should respond to that portion of the request that you do not consider overbroad and explain why you believe the remainder is overbroad.

11.    These requests are continuing in nature pursuant to Federal Rule of Civil Procedure 26. If, after responding to the requests, you obtain or become aware of any further responsive information, either directly or indirectly, a supplemental answer is required. You are under a duty to amend a prior response upon learning that the response is in some material

3

respect incomplete or incorrect and if the additional or corrective information has not been made known to Plaintiff during the discovery process or in writing.

## DEFINITIONS

1.      "Communicate" or "communication" includes every manner or means of disclosure, transfer, or exchange of information (in the form of facts, ideas, inquiries, or otherwise), whether orally, electronically, by document, telecopier, mail, personal delivery, or otherwise.

2.      "Document" shall have the broadest meaning permitted under the Federal Rules of Civil Procedure and includes, without limitation, any type of electronically stored information. "Document" includes all originals, copies, non-identical copies (whether different from the original because of underlining, editing marks, notes made on or attached to such copy, or otherwise) and drafts, whether printed or recorded (through a sound, video, or other electronic, magnetic, or digital recording system) or reproduced by hand, of the following: letters, correspondence, telegrams, telexes, memoranda, records, summaries of personal conversations or interviews, minutes or records or notes of meetings or conferences, note pads, notebooks, postcards, "Post-It" or similar notes, stenographic notes, notes, notebooks, opinions or reports of financial advisors or consultants, opinions or reports of experts, projections, financial or statistical statements or compilations, contracts, agreements, appraisals, analyses, purchase orders, confirmations, publications, articles, books, pamphlets, circulars, microfilm, microfiche, reports, studies, logs, surveys, diaries, calendars, appointment books, maps, charts, graphs, bulletins, photostats, speeches, data sheets, pictures, photographs, illustrations, blueprints, films, drawings, plans, tape recordings, videotapes, disks, diskettes, data tapes or readable computer-

produced interpretations or transcriptions thereof, electronically transmitted messages ("e-mail"), voice mail messages, interoffice communications, material of any sort and in any format maintained or available at any time on the World Wide Web (whether formerly, currently, or both), any metadata associated with any electronically stored information, and any other writings, papers, tangible things and electronically stored information of whatever description.

3.      "Identify" means: (a) with respect to factual or legal issues, to state all facts, acts or events, documents, persons with knowledge, and/or legal standards that relate to the subject of the request and describe the way in which they relate to the subject of the request; (b) when used to reference a natural person, to state the person's full name and present or last known address and telephone number(s) and the person's present or last known position, title and employment or business affiliation, as well as the person's work e-mail address; and (c) when used in reference to a document, to state the author of the document, the date of the document, each addressee or copy addressee of the document, the subject matter of the document, and the present location of the document and the name of the present custodian of the document.

4.      "Person" or "Persons" refers to a natural person, firm, proprietorship, association, partnership, corporation, or any other type of organization or entity.

5.      "Subject Property" refers to the real property and improvements known as Busch Gardens, generally located at 1 Busch Gardens Boulevard, Williamsburg, Virginia 23185.

6.      "You" or "Your" means Defendant Seaworld Parks & Entertainment, Inc., its predecessors, successors, affiliates, subsidiaries, divisions, parent companies, partners, agents, employees, officers, directors, representatives, beneficiaries or any other person or persons acting for or purportedly acting on behalf of or in concert with Defendant Seaworld Parks &

Entertainment, Inc.

7.    Except as otherwise set forth in these "Instructions" and "Definitions" all other words utilized in these requests are to be interpreted according to their normal and everyday usage.

## DOCUMENT REQUESTS

### REQUEST FOR PRODUCTION NO. 1

Your articles of incorporation.

### REQUEST FOR PRODUCTION NO. 2

Your partnership agreements relating to limited or general partnerships.

### REQUEST FOR PRODUCTION NO. 3

A copy of the deed evidencing title to the Subject Property

### REQUEST FOR PRODUCTION NO. 4

All contracts and/or agreements relating to use of the Subject Property, including lease agreements.

### REQUEST FOR PRODUCTION NO. 5

All Your tax returns for the last three (3) years.

### REQUEST FOR PRODUCTION NO. 6

All Documents reflecting financial projections or estimations regarding Your future growth in revenue.

### REQUEST FOR PRODUCTION NO. 7

All Documents evidencing Your number of employees for the years 2005 through the present. (You may list the number of employees for each year in lieu of these records).

**REQUEST FOR PRODUCTION NO. 8**

All Documents reflecting blueprints, site plans, or other architectural renderings for the Subject Property.

**REQUEST FOR PRODUCTION NO. 9**

All Documents reflecting the number and/or location of any stores, rooms, entrances, pathways, bathrooms, and parking spaces

**REQUEST FOR PRODUCTION NO. 10**

All Documents reflecting applications for building permits relating to the Subject Property.

**REQUEST FOR PRODUCTION NO. 11**

All Documents since 1990 reflecting reports, memoranda, operating procedures, operating manuals, guides, and/or employee training that regard (in whole or in part) compliance with the Americans With Disabilities Act.

**REQUEST FOR PRODUCTION NO. 12**

All Documents reflecting any design and/or construction of facilities at the Subject Property by or on behalf of You, including but not limited to proposals, plans, designs, blueprints, contracts, work orders, invoices, and/or similar Documents.

**REQUEST FOR PRODUCTION NO. 13**

All Documents reflecting alterations, modifications, remodeling and/or renovation to the Subject Property by or on behalf of You, including but not limited to proposals, plans, designs, blueprints, contracts, work orders, invoices, and/or similar Documents.

**REQUEST FOR PRODUCTION NO. 14**

All Documents reflecting elevator licenses, permits, maintenance agreements, and other Documents reflecting the installation, repair, or maintenance of elevators at the Subject Property.

**REQUEST FOR PRODUCTION NO. 15**

A copy of all certificates of occupancy for the Subject Property.

**REQUEST FOR PRODUCTION NO. 16**

All Documents reflecting measures taken by You to comply with the Americans with Disabilities Act at the subject property.

**REQUEST FOR PRODUCTION NO. 17**

All Documents from the last three (3) years reflecting the profit of the theme park located at the Subject Property.

**REQUEST FOR PRODUCTION NO. 18**

All Documents from the last three (3) years reflecting the financial resources of the theme park located at the Subject Property.

**REQUEST FOR PRODUCTION NO. 19**

All Documents from the last three (3) years reflecting the number of Your employees at the Subject Property.

**REQUEST FOR PRODUCTION NO. 20**

All Documents from the last three (3) years reflecting the annual operating budget of the theme park located at the Subject Property.

**REQUEST FOR PRODUCTION NO. 21**

All Documents from the last three (3) years reflecting Your overall financial resources.

**REQUEST FOR PRODUCTION NO. 22**

All Documents from the last three (3) years that reflect the total number, type, and/or locations of facilities owned by You.

## REQUEST FOR PRODUCTION NO. 23

All Documents (including but not limited to Documents produced prior to January 26, 1992) reflecting any financial assessment of the Subject Property prior to its acquisition by Blackstone.

## REQUEST FOR PRODUCTION NO. 24

All Documents reflecting financial assistance received by the federal government relating to the Subject Property.

## REQUEST FOR PRODUCTION NO. 25

All Documents reflecting financing by the federal government of any construction project at the Subject Property.

## REQUEST FOR PRODUCTION NO. 26

All Documents reflecting a barrier removal plan for persons with disabilities.

## REQUEST FOR PRODUCTION NO. 27

All Documents reflecting complaints by customers regarding disability accessibility issues at the Subject Property.

## REQUEST FOR PRODUCTION NO. 28

All Documents reflecting the construction (and payment therefore) of new facilities at the Subject Property.

## REQUEST FOR PRODUCTION NO. 29

All Documents reflecting Your policies and/or procedures for providing access for

disabled individuals at the Subject Property.

### REQUEST FOR PRODUCTION NO. 30

All Documents reflecting Your gross receipts for the past three (3) years.

### REQUEST FOR PRODUCTION NO. 31

All Documents reflecting gross receipts at the Subject Property for the past three (3)

years.

### REQUEST FOR PRODUCTION NO. 32

All Documents reflecting building code compliance measures at the Subject Property.

### REQUEST FOR PRODUCTION NO. 33

All Documents reflecting Your overall approach to accommodation under the ADA.

### REQUEST FOR PRODUCTION NO. 34

All Documents reflecting policies of insurance which relate in any way to this litigation.

### REQUEST FOR PRODUCTION NO. 35

All Documents consulted, reviewed, and/or relied upon in responding to Plaintiff's First

Set of Interrogatories.

### REQUEST FOR PRODUCTION NO. 36

All photographs which relate to disability accessibility measures at the Subject Property.

### REQUEST FOR PRODUCTION NO. 37

All Documents relating to the France widening project and/or front gate modifications.

### REQUEST FOR PRODUCTION NO. 38

Your ride accessibility guidelines and/or similar Documents.

### REQUEST FOR PRODUCTION NO. 39

All Documents relating to funds allocated for accessibility issues.

**REQUEST FOR PRODUCTION NO. 40**

All Documents relating to the March 24, 2003 Accessibility Evaluation Survey by Larry

Schneider.

**REQUEST FOR PRODUCTION NO. 41**

All audited financial statements and/or similar Documents for the Busch Gardens park.

**REQUEST FOR PRODUCTION NO. 42**

All documents produced in the litigation involving the Accessibility Evaluation Survey

(attached hereto as Exhibit A), including but not limited to deposition transcripts.

**REQUEST FOR PRODUCTION NO. 43**

All versions of the "Disabled Access Guide" (which is currently provided to consumers at

the buschgardens.com website).

Date: October 20, 2011                                 Respectfully Submitted,

                                                       KU & MUSSMAN, P.A.


                                                       By: _____
                                                       M. Ryan Casey, Esq. (Va. # 72806)
                                                       ryan@kumussman.com
                                                       12550 Biscayne Blvd., Suite 406
                                                       Miami, Florida 33181
                                                       Tel: (305) 891-1322
                                                       Fax: (305) 891-4512

                                                       *and*

                                                       Shabnam Khalili, Esq. (Va. # 78681)
                                                       SKhalili7@gmail.com
                                                       Of Counsel

4775 W. Braddock Road #102
Alexandria, VA 22311
Tel: (202) 573-7070
Fax: (305) 891-4512

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 20th day of October, 2011, a true and correct copy of the foregoing has been furnished by U.S. mail to all counsel of record.

By: _____
M. Ryan Casey, Esq.

12

**From:**    Martin, Eric B. [EMartin@mcguirewoods.com]
**Sent:**    Tuesday, March 29, 2011 10:17 AM
**To:**      'Brian'
**Cc:**      'Louis'; 'Reyna'
**Subject:** RE: Busch Gardens

Brian,

I was out of the office today, but am in most of the day today if you wish to discuss.

My client has not owned Busch Gardens for more than a year.  Previous financial statements would come from Anheuser-Busch.  I believe those are available at http://www.anheuser-busch.com/AnnualReports.html  Those annual reports have breakout data from Busch Entertainment Corp., which was the entity sold to the Blackstone Group.

You are correct that there is no MD&A.  As a private company, no such information is prepared as part of the financial statement.

Similarly, privately held companies are not required to produce audited financial statements.  You may find that hard to believe, but it is a fact.  Check with your CPA.

Your other questions regarding interest expense, debt structure, and the ownership of Blackstone are questions you may wish to explore in further discovery requests.

Let me know if you have any further questions.

Eric

---

**From:** Brian [mailto:Brian@kumussman.com]
**Sent:** Monday, March 28, 2011 10:14 AM
**To:** Martin, Eric B.
**Cc:** Louis; Reyna
**Subject:** Busch Gardens

Eric,

We need more financial documents from you regarding your client.  Our discovery requests ask for 5 years of audited financial statements and after months of waiting, we only received a one page summary of one year.  Consequently, it is it impossible to know if there were one-time gains/losses that affected results - we need normalized earnings for comparison purposes.  Also, there is no "Management Discussion and Analysis" (MD&A); similar to above - without details, it is impossible to accurately value the company.  Moreover, what is the high interest expense burden - how does the debt structure flow within Blackstone ownership?  Is the debt pushed down to the operating company?  We find it hard to believe that there are no audited financials for your client.

Based on the issues above, we would like to schedule a Rule 37 conference for today.  Please advise your availability.  Thanks

*Brian Ku*
**Ku & Mussman, P.A.**
12550 Biscayne Blvd.
Suite 406
Miami, Florida 33181


**EXHIBIT**

C

Tel: (305) 891-1322
Fax: (305) 891-4512
brian@kumussman.com

The information contained in this transmission may contain privileged and confidential information. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

1/13/2012

**From:**     Martin, Eric B. [EMartin@mcguirewoods.com]
**Sent:**     Wednesday, November 10, 2010 2:31 PM
**To:**       'Reyna'
**Cc:**       'Louis'; 'Brian'
**Subject:** RE: Walden v. Busch Entertainment

Please change the signature line to reflect my information:

Eric B. Martin (VSB # 75157)
McGuire Woods LLP
901 East Cary Street
Richmond, Virginia 23219
804-775-1129
emartin@mcguirewoods.com

Other than that, looks good.

Eric

---

**From:** Reyna [mailto:Reyna@kumussman.com]
**Sent:** Wednesday, November 10, 2010 2:27 PM
**To:** Martin, Eric B.
**Cc:** Louis; Brian
**Subject:** Walden v. Busch Entertainment

Mr. Martin,

Attached please find a copy of our proposed motion for extension of all deadlines in regards to the above referenced for your review.  Please let us know at your earliest convenience if you have any changes. Thank you in advance.

*Reyna Sarmiento*
**Ku & Mussman, P.A.**
12550 Biscayne Blvd.
Suite 406
Miami, Florida 33181
Tel: (305) 891-1322
Fax: (305) 891-4512
reyna@kumussman.com



EXHIBIT

D

**From:**    Brian [Brian@kumussman.com]
**Sent:**    Friday, February 25, 2011 11:32 AM
**To:**      Martin, Eric B.
**Cc:**      Louis; Reyna
**Subject:** RE: Busch Gardens

Eric,

We will sign the protective order and email it back to you asap.  Also,  thank you for the informal extension on our financial expert disclosure deadline.  Finally, we are preparing a proposed settlement agreement and hope to have it for your client's review by Monday next week.  Thanks

*Brian Ku*
**Ku & Mussman, P.A.**
12550 Biscayne Blvd.
Suite 406
Miami, Florida 33181
Tel: (305) 891-1322
Fax: (305) 891-4512
brian@kumussman.com

The information contained in this transmission may contain privileged and confidential information.  It is intended only for the use of the person(s) named above. If you are not the intended recipient,  you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

**From:** Martin, Eric B. [mailto:EMartin@mcguirewoods.com]
**Sent:** Friday, February 25, 2011 11:20 AM
**To:** Brian
**Cc:** Louis; Reyna
**Subject:** RE: Busch Gardens

Brian,

I apologize for the delay in getting back to you - our office was decimated with people out with the flu or in trial over the last 2 weeks.

We are gathering the financial information and will provide it soon.  Attached is a draft agreed protective order, please review it and, if it meets with your approval, sign and return it to me (pdf is fine) and I will present it to the court for entry.

It's 11:15 now, I'll be in my office for another hour or so, then I'll be unavailable until Monday - if you are available & want to chat, please give me a buzz at 804-775-1129.

Thanks

Eric



**EXHIBIT**

E

**From:** Brian [mailto:Brian@kumussman.com]
**Sent:** Thursday, February 24, 2011 1:06 PM
**To:** Martin, Eric B.
**Cc:** Louis; Reyna
**Subject:** Busch Gardens

Eric,

Would you give me a ring about the status of settlement and upcoming deadlines?  Thanks

*Brian Ku*
**Ku & Mussman, P.A.**
12550 Biscayne Blvd.
Suite 406
Miami, Florida 33181
Tel: (305) 891-1322
Fax: (305) 891-4512
brian@kumussman.com

The information contained in this transmission may contain privileged and confidential information. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

1/13/2012

**From:**      Louis [Louis@kumussman.com]
**Sent:**      Monday, April 18, 2011 4:06 PM
**To:**        Martin, Eric B.
**Cc:**        Brian; Reyna
**Subject:**   Busch Gardens - depositions of plaintiff and expert

Eric,

We need to speak as soon as possible regarding the deposition of Plaintiff's expert.  We recently learned of a serious matter that prevents Mr. Clark from further testimony in this case.  We are currently preparing a Motion for Continuance of the Trial and to reopen the expert disclosure deadline for the purpose of removing Mr. Clark as Plaintiff's ADA expert and seeking that a new inspection/report be prepared.  As you may guess, we believe there to be good cause for the relief requested. I will send you the motion for review once it is drafted.

Please contact me to discuss this in further detail.


Louis Mussman, Esq.
Ku & Mussman, P.A.
12550 Biscayne Blvd.
Suite 406
Miami, Florida 33181
Tel: (305) 891-1322
Fax: (305) 891-4512
louis@kumussman.com

---

The information contained in this transmission may contain privileged and confidential information.  It is intended only for the use of the person(s) named above. If you are not the intended recipient,  you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.


-----Original Message-----
From: Louis
Sent: Wednesday, April 13, 2011 12:49 PM
To: 'Martin, Eric B.'
Cc: Brian; Reyna
Subject: RE: Docs

Eric,

I am in receipt of the ride access document.  Also, we are checking availability for some earlier deposition dates.

Thanks,


Louis Mussman, Esq.
Ku & Mussman, P.A.
12550 Biscayne Blvd.
Suite 406
Miami, Florida 33181
Tel: (305) 891-1322
Fax: (305) 891-4512
louis@kumussman.com

---

**EXHIBIT**

F

The information contained in this transmission may contain privileged and confidential
information.  It is intended only for the use of the
person(s) named above. If you are not the intended recipient,  you are hereby notified
that any review, dissemination, distribution or duplication of this communication is
strictly prohibited. If you are not the intended recipient, please contact the sender by
reply email and destroy all copies of the original message.

-----Original Message-----
From: Martin, Eric B. [mailto:EMartin@mcguirewoods.com]
Sent: Wednesday, April 13, 2011 10:14 AM
To: Brian; Louis
Subject: Fw:

-

Sent from somewhere on the road via Blackberry wireless.

Eric B. Martin
McGuire Woods
901 East Cary Street
Richmond, VA 23219
office: 804-775-1129
cell: 804-239-6784
EMartin@McGuireWoods.com

----- Original Message -----
From: ric067m@mcguirewoods.com [mailto:ric067m@mcguirewoods.com]
Sent: Wednesday, April 13, 2011 09:49 AM
To: Martin, Eric B.
Subject:

This E-mail was sent from "RNPE58BE6" (Aficio MP 7000).

Scan Date: 04.13.2011 09:49:52 (-0400)
Queries to: ric067m@mcguirewoods.com

| | |
|---|---|
| **From:** | Martin, Eric B. [EMartin@mcguirewoods.com] |
| **Sent:** | Tuesday, April 19, 2011 2:54 PM |
| **To:** | 'louis@kumussman.com' |
| **Cc:** | 'brian@kumussman.com' |
| **Subject:** | RE: Walden case |

Forgot to mention, Judge Friedman is on senior status & rumor is he's going to actually retire in July, thus our thinking that he'd rather see the case off his docket.

---

**From:** Martin, Eric B.
**Sent:** Tuesday, April 19, 2011 2:18 PM
**To:** louis@kumussman.com
**Cc:** brian@kumussman.com
**Subject:** Walden case

Lou,

I've discussed our unusual situation with my client and some other attorneys in my office.  We're of the opinion that it is likely Judge Friedman will not grant a continuance (especially since Magistrate Miller already granted one that seemed to irritate him), preferring instead that you voluntarily dismiss the case under Rule 41 and refile once you have had an opportunity to retain another expert.  I don't believe we would have any objection if that is the route you prefer to take.

The decision is, of course, yours, but please do make a motion of some sort as soon as possible, as otherwise I will be forced to make a motion due to the unavailability of the witness.

I'm around today if you wish to discuss.

Eric


Eric B. Martin
McGuireWoods LLP
One James Center
901 East Cary Street
Richmond, VA 23219-4030
804.775.1129 (Direct Line)
804.698.2149 (Direct FAX)
emartin@mcguirewoods.com
http://www.mcguirewoods.com

---

*This e-mail may contain confidential or privileged information. If you are not the intended recipient, please advise by return e-mail and delete immediately without reading or forwarding to others.*



**EXHIBIT**

G

| From: | Martin, Eric B. [EMartin@mcguirewoods.com] |
|---|---|
| Sent: | Friday, January 06, 2012 11:09 AM |
| To: | Ryan |
| Cc: | Gray, Robyn S. |
| Subject: | Discovery |
| Attachments: | Active_35278296_1_Objections to RFPs.DOC; Active_36016622_1_Answers and Objections to Interrogatories.DOC |

Ryan,

attached are the answers to interrogatories and requests for production.

As I mentioned before, Robbie Gray will be handling this while I am out. She is cc'd on this email.

While you repeatedly claim that the production is "grossly deficient," you have failed to give any specifics or explain what you are looking for. It will likely make any meeting more productive if you explain exactly what information you believe you are entitled to. We took you overbroad discovery requests and interpreted them in the most reasonable manner given the case. In light of your client's deposition testimony in which he could not remember any claims other than a claim for the parking lot slope and the slopes of the walkways in the park, we do not believe most of your discovery requests are well taken and have objected on that basis. If you find you are missing something you reasonably need to pursue this case, you should let us know rather than simply repeating vague allegations of deficiencies.

As we noted in our objections, your discovery requests are quite overbroad. For example, you seek financial information from Blackstone, which is not a party to this litigation. You also request information about every contractor to work in the park in the last dozen years - a staggering amount of information that would not lead to any useful information.

The documents we previously provided were responsive to your requests and were identified with respect to specific interrogatories and requests. There is no requirement that we bates stamp our documents and we are not inclined to do so in this case.

If, upon examining these answers, you still feel entitled to more information, you may schedule a date and time to discuss that with Ms. Gray. Please also be prepared to discuss our objections in advance of a motion for a protective order.

Finally, I have received your deposition notices. I do not believe that Mr. Carr is any longer at the park in Williamsburg. The date you selected for Ms. Cheely will not work for us. February 3, 8, 9, or 10 are all fine.

Eric

Eric B. Martin
McGuireWoods LLP
One James Center
901 East Cary Street
Richmond, VA 23219-4030
804.775.1129 (Direct Line)
804.698.2149 (Direct FAX)
emartin@mcguirewoods.com
http://www.mcguirewoods.com

*This e-mail may contain confidential or privileged information. If you are not the intended recipient, please advise by return e-mail and delete immediately without reading or forwarding to others.*

EXHIBIT

tabbies

H

McGuireWoods LLP
One James Center
901 East Cary Street
Richmond, VA 23219-4030
Phone: 804.775.1000
Fax: 804.775.1061
www.mcguirewoods.com

Robyn S. Gray
Direct: 804.775.1227

rgray@mcguirewoods.com
Direct Fax: 804.698.2138

# McGUIREWOODS

January 11, 2012

<u>VIA U.S. MAIL & E-MAIL</u>

M. Ryan Casey, Esq.
Ku & Mussman, P.A.
12550 Biscayne Blvd.
Suite 406
Miami, Florida 33181

Re:   *Walden v. SeaWorld Parks & Entertainment, Inc.*
      Civil Action No.: 4:11-cv-0113-MSD-FBS

Dear Ryan:

As you know, my colleague Eric Martin is on parental leave and will not return to the office until early February. Thus, I write to respond to your January 9 and January 10, 2012 letters. I also write to address and further clarify issues raised during the conference call we had yesterday. For ease of reference, I responded to the issues in the order they were raised in your letters.

At the outset, our client remains willing to provide you with certain relevant information in response to your written discovery; however, and as is discussed in greater detail below, it is evident on the face of Plaintiff's Complaint, First Set of Interrogatories and First Set of Requests for Production that you and your client are engaging in a fishing expedition. For example, you have requested, among other things:

- the number of Defendant's employees since 2005 (RFP 7);
- all documents "since 1990 reflecting reports, memoranda, operating procedures, operating manuals," etc. in connection with the ADA, as a whole, and not just Title III (RFP 11);
- all documents concerning the construction of facilities at Subject Property (RFP 12);
- all documents reflecting the number of employees at the Subject Property (RFP 19), which is the same as what is requested in RFP 7;

Atlanta | Austin | Baltimore | Brussels | Charlotte | Charlottesville | Chicago | Houston | Jacksonville | London
Los Angeles | New York | Norfolk | Pittsburgh | Raleigh | Richmond | Tysons Corner | Washington, D.C. | Wilmington

**EXHIBIT**

I

January 11, 2012
Page 2

- all documents reflecting the construction of new facilities at the Subject Property (RFP 28), which also appears to duplicate RFP 12;
- the names of all individuals who have performed any architectural or design services concerning the Subject Property since 1992 (Int. 7); and
- expansive financial data about Blackstone, which is not a party to this litigation (Int. 15).[1]

Nevertheless, and as we mentioned numerous times during the conference call, we seek to reach a common ground in discovery that will allow us to provide you with relevant information concerning the matters at issue in this litigation. We encourage you to reconsider your unwillingness to engage in discussions aimed at explaining in greater detail the information you seek in discovery and potentially limiting the scope of Plaintiff's First Interrogatories and First Requests for Production of Documents.

While you expressed a willingness to engage in motions practice if this discovery dispute is not resolved to your liking, we strongly feel that it would be more efficient, economical, and in the best interests of all parties to work through these issues without involving the Court.

1.   **Bates Labeling:**  To the extent any additional documents are produced by our client in response to Plaintiff's written discovery requests, we agree that such documents will be Bates stamped before they are produced unless the document is in such a format (e.g., large spreadsheet) which makes it difficult to produce on paper or in .PDF format.  In that instance, we will confer with you before producing the document.

2.   **General Objection to Plaintiff's First Set of Interrogatories:**  We have reconsidered your request to withdraw the General Objection set forth at the beginning of Defendant's First Interrogatory Answers and agree to withdraw it.

3.   **Relevancy Objections:**  You contend that Defendant's objections to several of your discovery requests have been waived because the objections were not made with the requisite specificity.  We dispute this contention on the grounds that the overwhelming majority of the interrogatories and requests at issue are overbroad on their face and/or seek disclosure of information and/or documents which are not germane to the issues raised in this Title III ADA action.  Notwithstanding the issues presented by the breadth of your discovery requests, during our call, we specifically and repeatedly requested that you discuss with us the particulars of each of your interrogatories and requests for production in an effort to determine if any of these discovery requests could be narrowed, eliminated altogether, or further clarified.  You refused to engage in any such discussion.  Instead, you asserted that your argument as to waiver eliminated any obligation or desire on your part to do so.

---

[1] This list of examples is not intended nor should it be construed to limit any objections made to Plaintiff's written discovery in this case.

January 11, 2012
Page 3

**4.     Interrogatory 2**: We agree to supplement our answer to this interrogatory and to provide you with the names of individuals interviewed and/or consulted in connection with the current litigation.  This renders the second sentence under the sub-heading "Interrogatory 2" in your January 10th letter moot.

**5.     Interrogatories 10, 14, 18**: With respect to these interrogatories, we agree to:  (i) state in our answer whether we are invoking Rule 33(d) and (ii) supplement our responses to incorporate, where applicable, Mr. Martin's communications to you concerning Defendant's document production.

Upon further review of page 2 of your January 9th letter, which states, among other things, that a "number of documents produced were created within the context of litigation and thus Defendant cannot avail itself of Rule 33(d) with respect to those documents," we need further clarification from you as to which documents produced in this litigation you believe fall outside the category of those addressed in Rule 33(d).

Additionally, with respect to Interrogatory 10, which is unintelligible, we produced two Excel spreadsheets, which are business records of Defendant and not expert reports prepared in the course of litigation, and which we believe are similar, if not the same document, except for the creation date assigned to the spreadsheets.  We agree to supplement our answer to reflect the production of these documents.  We believe that this document adequately responds to Interrogatory 10 and do not intend to produce other documents at this time.

With respect to Interrogatory 14, we produced a summary of Defendant's of unaudited financial statements which detail total profit or losses for Busch Gardens Williamsburg and for Defendant as a whole.  The complete financial universe of documents sought by this Interrogatory is overly broad and the information provided sufficiently provides you with the information you seek from Defendant.  Accordingly, we do not intend to produce other documents at this time.

With respect to Interrogatory 18, we will supplement our answer and include the appropriate Rule 33(d) language.  Additionally, Defendant has produced all available policies responsive to this Interrogatory.

**6.     Responses to Plaintiff's First Requests for Production**: We agree to supplement our responses to Plaintiff's First Requests for Production as indicated at the top of page 2 of your January 10th letter; however, in so responding, we may, as is our right, also state that Defendant stands on its objections to certain discovery requests.

**7.     Requests for Production Nos. 11, 16, 26, 36, 40, 43**: We disagree with the first sentence contained in this sub-section located on page 2 of your January 10th letter, or stated another way, there is no Rule 33(d) equivalent in Rule 34 requiring a

January 11, 2012
Page 4

party to differentiate between business records and other documents produced in the course of litigation. To the extent, however, that Mr. Martin's prior correspondence stated that documents produced to you were responsive to certain requests for production, we agree to supplement our responses accordingly.

      8.    **Request for Production 35:** We agree to supplement our response. As we discussed yesterday, we do not believe that there were any non-privileged documents consulted, reviewed, and/or relied upon in responding to Plaintiff's First Set of Interrogatories; however, to the extent you feel that an interrogatory answer which relies on Rule 33(d) would also trigger a response under RFP 35, then we agree to supplement accordingly.

      9.    **Request for Production 8:** You agreed to review documents responsive to RFP 8 on site since most, if not all, documents responsive to this request are maintained on paper, albeit in large formats (e.g., maps, drawings, etc.).

I believe the foregoing adequately addresses your January 9th and 10th letters, as well as the issues raised during our conference call. If you believe that we have omitted something in our response or would like to discuss these issues further, please give me a call at the number above.

**Deposition Subpoenas:** As Mr. Martin informed you by email, Mr. Carr is no longer employed by SeaWorld, and Ms. Cheely is not available on the date you requested. Mr. Martin gave you several dates on which Ms. Cheely will be available. Please let us know if you intend to reschedule her deposition.

Very truly yours,

Robyn S. Gray

cc:    Eric B. Martin, Esq.

1

V I R G I N I A:   IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA:   NEWPORT NEWS

DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - -

Ronald W. Walden, Jr.,                )

                 Plaintiff,      )

   -vs-                               )

Sea World Parks &                     )   Case No: 4:11-CV-113

Entertainment, Inc.,                  )

A Delaware Corporation,               )

                 Defendant.      )

                            )

- - - - - - - - - - - - - - - - - - - - - - - - -


      Discovery deposition of RONALD W. WALDEN, JR.,

taken before Anne Marie Farmer, a Notary Public for

the Commonwealth of Virginia at Large, at the Omni

Hotel, 1000 Omni Boulevard, Newport News, Virginia, on

December 14, 2011 pursuant to notice to take discovery

deposition and agreement of counsel in the

above-entitled cause, pending in the United States

District Court for the Eastern District of Virginia,

Newport News Division.

ANNE MARIE FARMER
SCHNEIDER & ASSOCIATES, L.C.
POST OFFICE BOX 22348
NEWPORT NEWS, VA  23609-2348



EXHIBIT

J

2

1   APPEARANCES:

2   For the Plaintiff:

3        Ryan Casey, Esquire

4        Ku & Mussman, PA

5        12550 Biscayne Boulevard

6        Suite 406

7        Miami, Florida 33181

8

9   For the Defendant:

10        Eric Martin, Esquire

11        McGuireWoods, LLP

12        One James Center

13        901 East Cary Street

14        Richmond, Virginia 23219-4030

15

16

17

18

19

20

21

22

23

24

25

6

```
 1    Gardens?   Do you recall?
 2              A        2110, 2011.   May.
 3              Q        In May of both years?
 4              A        Yes.
 5              Q        And did you drive yourself
 6    there?
 7              A        Yes, sir.
 8              Q        And where did you park?
 9              A        In the handicap area.
10              Q        Other than in May of 2010 and
11    May of 2011, have you ever visited Busch Gardens?
12              A        Before then or --
13              Q        Either before or since.
14              A        I've been there several times.
15              Q        Have you been there after May
16    of 2011?
17              A        No, sir.
18              Q        Do you park in the same parking
19    area each time?
20              A        Those two times.   Yes, sir.
21              Q        Okay.   Did you have any
22    difficulty finding parking?
23              A        I drove around maybe four or
24    five times until I could find a space.
25              Q        And you parked in a handicap
```

10

1   I do remember that.  It seemed pretty steep.  I even,

2   you know, mentioned that it just felt, you know, just

3   straight ahead.

4                Q          Right.  Okay.  So, after you

5   entered the park, what did you do that day?

6                A          I believe the first thing I did

7   was got something to eat.  Basically, just a lot of

8   sightseeing.

9                Q          Do you remember where you got

10  something to eat?

11               A          I don't remember exactly where

12  I stopped to eat.

13               Q          Did you go on any rides while

14  you were in the park?

15               A          I would have liked to have

16  ridden some rides, but I never got on any rides.

17               Q          Prior to visiting the park or

18  when you arrived at the park, prior any time, have you

19  ever received or looked at the disabled rider's guide?

20  The guide to rides.

21               A          No.  I've never seen a disabled

22  rider's guides.

23               Q          Have you ever seen signs about

24  that?

25               A          I don't recall seeing any

29

1    BY MR. MARTIN:

2              Q        Do you remember the theaters

3    you visited?  Were they indoors or outdoors?

4              A        They were indoor.

5              Q        Did you ever visit an outdoor

6    theater when you were there?

7              A        I can't recall exactly.

8              Q        Do you remember what type of

9    show was put on in the theater?

10             A        I don't remember which show I

11   went to go see.

12             Q        Do you remember any details

13   about the show at all?

14             A        Not right now.  No.

15             Q        And you don't remember what

16   country the theater was located in?

17             A        I don't want to guess.  I have

18   no idea if it was in Germany or France.  I have no

19   idea.

20             Q        Okay.  Did you say you did ride

21   on the sky ride?

22             A        Yes, sir.

23             Q        Do you remember what country

24   you boarded in?

25             A        Again, I can't remember from

30

1   which country to which I went to, but I did ride the

2   skyliner.

3           Q       Did you go from one stop to a

4   different stop, or did you ride the whole circle and

5   come back to your original stop?

6           A       Well, I would use it to get

7   from one area to the other.  I didn't just, like, ride

8   it and then stay on it.  I would ride it, get off, see

9   that area, get on from the same area, and go to

10  another area.  So it wasn't, like, a continuous

11  nonstop ride.

12          Q       Right.

13          A       Right.

14          Q       So you took your chair with you

15  on the ride?

16          A       Yes.  I would place it on the

17  same bucket.  I call it a little bucket.  Uh-huh.  It

18  would ride with me.

19          Q       And was that the only ride you

20  actually went on during your trip?

21          A       Yes.  If you call that a ride.

22  Yes.

23          Q       You mentioned the boat ride

24  that you wanted to go on that was at the bottom of a

25  steep hill.  No access.

31

1          A          Correct.

2          Q          What other rides did you want

3    to ride on?

4          A          I'm trying to remember their

5    names.

6                      MR. CASEY:  I'm going to object

7    because that's been asked and answered but you can go

8    ahead.

9                      THE WITNESS:  I don't remember

10   the names of the exact rides.

11   BY MR. MARTIN:

12         Q          Do you remember any details

13   about the rides at all?

14         A          Yeah.  Like, roller coasters,

15   some water rides.  Things like that.  But their

16   correct names -- I don't know their specific names.

17         Q          And do you remember anything --

18   any of the specific things that prevented you from

19   going on those rides?

20         A          Well, some I know were height

21   requirement maybe, and I know that was, like, an issue

22   on some of them.  Yeah.  I mean, I can't do anything

23   about that.

24         Q          How tall are you?

25         A          Last time I was measured I was

32

1   three foot six.

2                Q         What were some of the other

3   reasons you couldn't get on the rides?

4                A         I don't know.   Maybe -- I mean,

5   some maybe were just long lines and just didn't feel

6   like waiting, you know, a very long time or maybe, if

7   it was, you know, I didn't think I would be able to

8   get on them.   Maybe not tall enough.

9                Q         Anything else?

10                A         That's all I can remember

11  today.

12                Q         Do you remember what you ate

13  while you were at the park?

14                A         I started off -- we got, like,

15  funnel cakes, pretzel, and then right before I left I

16  did get a burger and fries.

17                Q         Do you remember where you got

18  those?

19                A         I have no idea what the name of

20  the places were.   Most of the restaurants would be,

21  you know, two or three beside each other.   Basically,

22  would pick the shortest line.

23                Q         Do you remember what country

24  you were in when you had the burger and fries?

25                A         I have no idea.

33

1           Q          Was it indoors or outdoors?

2           A          It was outdoors.

3           Q          And did you buy the pretzel and

4    the funnel cake from the same vendor?

5           A          No, sir.

6           Q          Two different ones?

7           A          Yes.

8           Q          Were those indoor or outdoors?

9           A          Outdoor.

10          Q          Both of them?

11          A          Yes.

12          Q          Do you remember which country

13   those were in?

14          A          No.

15          Q          Did you encounter any

16   difficulties in obtaining your meals while you were

17   there?

18          A          Other than the high counters.

19   No problem eating the meal.

20          Q          So you encountered high

21   counters?

22          A          Yes, sir.

23          Q          Anything else?

24          A          None that I can remember.

25          Q          Do you remember which line you